# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

      Plaintiff,

      v.

SHULMAN, ROGERS, GANDAL, PORDY
& ECKER, P.A. and
MORTON A. FALLER,

      Defendants.

Civil Action No. TDC-18-3695

## MEMORANDUM OPINION

Plaintiff Old Republic National Title Insurance Company ("Old Republic") has filed this legal malpractice and breach of contract action against attorney Morton A. Faller and his law firm, Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman Rogers") (collectively, Defendants), in connection with representation they provided to First Horizon Home Loan Corporation ("First Horizon"), in *First Horizon Loans v. Georg*, No. 03-C-10-011261 (Cir. Ct. Balt. Cty. 2010) ("*First Horizon*"). As title insurer for First Horizon, Old Republic retained and paid Defendants to litigate the case. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Old Republic has filed a Cross Motion for Summary Judgment. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED, and Old Republic's Cross Motion for Summary Judgment is DENIED.

## BACKGROUND

The facts of this case are largely undisputed. In February 2002, Heinz Otto Georg ("Mr. Georg") and his wife Susan Georg ("Mrs. Georg") (collectively, "the Georgs") purchased an unimproved piece of land at 504 Pond View Lane in Hunt Valley, Maryland ("the Property") as tenants in the entirety. In September 2004, the Georgs obtained a construction loan from Chevy Chase Bank, F.S.B. ("Chevy Chase") in the amount of $807,000, secured by a deed of trust on the Property. In September 2006, the Georg's obtained a $100,000 home equity line of credit, again from Chevy Chase, secured by a second deed of trust on the Property. Neither of these transactions is at issue here.

### I.      The Mortgage

In October 2006, Mrs. Georg, a real estate agent, contacted a First Horizon branch manager with whom she had previously conducted business to discuss refinancing the construction and home equity loans. The Georgs wished to structure the loan such that Mr. Georg would be the only borrower. Accordingly, only Mr. Georg is listed as a borrower on the resulting "Uniform Residential Loan Application," which requests a loan of $1.13 million. Joint Record ("J.R.") 236, ECF No. 32. The application lists the "subject property" as 504 Pond View Lane and notes that title to the Property was held by Heinz and Susan Georg as tenants in the entirety. *Id.*

First Horizon approved Mr. Georg's loan application. The Underwriting Summary for the loan identified it as a mortgage to be given first priority. The title search confirmed that title to the Property was held by Heinz and Susan Georg as tenants in the entirety. At closing, Mrs. Georg was listed on and signed several of the documents, including the Form HUD-1 Settlement Statement, a limited power of attorney for the correction of typographical errors, a title insurance owner's affidavit, and a residential mortgage survey affidavit. Each of these documents had been

2

prepared with signature lines for both Heinz Georg and Susan Georg. However, the deed of trust for this mortgage ("the Deed of Trust"), prepared by First Horizon, listed only Heinz Georg as the borrower and had a signature line only for him. Mr. Georg thus was the only signatory on the Deed of Trust. Mr. Georg was also the only person to initial each page of the Deed of Trust. These steps were in keeping with First Horizon's closing instructions, which stated, "vesting as follows: Heinz Otto Georg," an instruction that meant that only Heinz Georg would be included on the Deed of Trust. J.R. 122. The Deed of Trust, signed on October 28, 2006, was later recorded in the relevant county land records. However, First Horizon's title insurance policy on the Property, issued by Old Republic, identified the insured mortgage as the "Deed of Trust from Heinz Otto Georg and Susan M. Georg to Larry Rice, Trustee, securing First Horizon Home Loans in the original principal amount of $1,130,119.00." J.R. 342.

In December 2006, First Horizon sold the mortgage to the Bank of New York Mellon ("BNYM"), but First Horizon remained as the loan servicer. In July 2007, both Mr. and Mrs. Georg signed a deed of trust encumbering the Property as security for a new home equity line of credit provided by Bank of America.

In June 2009, the Georgs defaulted on the mortgage. When First Horizon attempted to initiate foreclosure proceedings, it discovered that because the Georgs owned the Property as tenants in the entirety, but only Mr. Georg had signed the Deed of Trust, First Horizon did not in fact have a secured loan on the Property. *See Columbian Carbon Co. v. Kight*, 114 A. 2d 28, 30 (Md. 1955) (stating that when a married couple owns property as tenants in the entirety, "neither the husband nor the wife can dispose of any part without the assent of the other"). In light of this cloud on First Horizon's title, in September 2010, First Horizon submitted a claim to Old Republic under its title insurance policy, which triggered Old Republic's duty to indemnify.

## II. The *First Horizon* Litigation

In response to First Horizon's claim, Old Republic retained Shulman Rogers, specifically Faller, to file suit against the Georgs on behalf of First Horizon. In September 2010, Defendants filed a Complaint, listing First Horizon as the plaintiff and the Georgs as the defendants, asserting claims for (1) reformation of the Deed of Trust, and related claims, seeking that both Mr. and Mrs. Georg be designated as co-grantors of the Deed of Trust based on the doctrine of mutual mistake; (2) equitable subrogation; and (3) equitable mortgage. *First Horizon v. Georg*, No. 03-C-10-011261 (Cir. Ct. Balt. Cty. 2010). In the equitable subrogation claim, First Horizon sought to be subrogated to the position of the prior Chevy Chase mortgage to the extent of $916,000, which was the mortgage balance that First Horizon had paid off as part of the refinancing. In the equitable mortgage claim, First Horizon sought an equitable mortgage on the Property, as if signed by both Mr. and Mrs. Georg, on equal terms to the defective First Horizon mortgage executed by Mr. Georg only. The Complaint also named as defendants PRLAP, Inc. and Bank of America, because those two entities together had a secured interest in the Property based on the 2007 home equity line of credit.

On December 8, 2011, Faller sent an email to First Horizon's counsel reminding her that they needed to address whether First Horizon was the proper plaintiff in the action. The same day, First Horizon's counsel responded that, in her estimation and the estimation of another colleague, the lawsuit should have been filed in the name of BNYM, not First Horizon, because BNYM held the mortgage while First Horizon was only the master servicer. Faller did not take any immediate action.

## A. The Correction

The case was scheduled for a bench trial to begin on Monday, April 23, 2012. On April 20, 2012, the Friday before trial, Faller filed a document entitled "Correction to Caption of Complaint and Name of Plaintiff," which stated that the caption of the case should be corrected to state that First Horizon, as master servicer, was suing in its capacity as an agent for BNYM. On the morning of April 23, the Georgs moved to strike the Correction, arguing that the Correction was in fact a procedurally improper attempt by First Horizon to amend its pleading and substitute a new plaintiff, in violation of Maryland Rule 2-341. In oral argument before the court, the Georgs pressed a new argument, specifically that the proposed correction to the caption revealed that First Horizon lacked standing to pursue its claims. Counsel for the Georgs asserted that because First Horizon had sold the mortgage loan to BNYM in 2006, the claims seeking reformation of the Deed of Trust, whether in contract or in equity, were no longer its to pursue. The Georgs accordingly moved to dismiss the action, or for summary judgment, based on First Horizon's lack of standing.

In response, Faller asserted, first, that it was only on April 20, three days before the trial, that he thought, as a precaution, to ensure that First Horizon was properly named as a plaintiff. He also asserted that as an equitable matter, First Horizon, as the loan originator and in its continuing role as master servicer, was the real party in interest. In support of that claim, Faller stated that at trial, the evidence would establish that the pooling and servicing agreement ("PSA") between BNYM and First Horizon gave First Horizon authority in its role as master servicer to pursue the reformation claims.

The court agreed with the Georgs' characterization of the Correction to Caption as, in fact, an amendment seeking to substitute a new plaintiff, denied the amendment, and expressed doubt that First Horizon had standing to pursue the action. However, the court reserved its decision on

5

dismissal or summary judgment, allowing First Horizon to have the opportunity to establish, as part of the merits trial, whether it was authorized to pursue the reformation claims on behalf of BNYM.

## B.    The Trial

At trial, the court received evidence on the merits of First Horizon's contract reformation claims, including testimony from a number of individuals involved in the origination of the First Horizon mortgage loan, the development of the closing documents, and the sequence of events at closing.  In particular, the court heard testimony from Daniel M. Radebaugh of First Mountain Title, Inc., an agent of Old Republic, who handled the closing.  Radebaugh testified that although Mrs. Georg was asked to sign a number of documents at closing, she was not asked to sign the Deed of Trust.  Radebaugh stated that Mrs. Georg was not asked to sign the Deed of Trust because her name was not included on it.  He noted that the Deed of Trust had been prepared by First Horizon.  Radebaugh also testified that although the title insurance offered by First Mountain Title was premised on the execution of the mortgage by both Mr. and Mrs. Georg, no documents describing that requirement were given to the Georgs.  First Horizon offered into evidence, without accompanying testimony, an April 2009 letter from Mrs. Georg to First Horizon stating that she was writing on behalf of both herself and her husband and asking for "special forbearance" on the loan, as well as tax statements, issued to Heinz Georg only, relating to mortgage interest on the First Horizon loan.  J.R. 369.

On the issue of standing, the court admitted into evidence the Georgs' October 2006 homeowners insurance policy, and other similar documents, listing First Horizon as "Mortgagee," and an excerpt from a PSA between First Horizon and BNYM that Faller believed to be, but was "not certain" was, a contract showing that First Horizon had received the right to assert BNYM's

6

rights relating to the mortgage. J.R. 134. Although the PSA was supposed to have a schedule of all covered loans, that schedule was not included in the exhibit or disclosed to the Georgs. However, Richard Stern, Vice President of Asset Recovery for First Horizon, testified that the PSA in evidence covered a group of loans that included the Georg loan.

At the close of First Horizon's case, the Georgs moved for judgment, pursuant to Maryland Rule 2-519(b). The court found that there was no evidence that the failure to have Mrs. Georg execute the Deed of Trust was a mutual mistake of the parties. First Horizon had produced no evidence that Mrs. Georg was particularly knowledgeable about the transaction or that she intended to be included on the Deed of Trust. "I was expecting," the court explained, "someone to come here and tell me during the negotiations, during the deal, this was explained to them. They were told it was necessary." J.R. 197. The testimony, however, was "no, we never discussed it, no, we didn't see any problem." *Id.* The mistakes in the documents could not, the court ruled, be imputed to the Georgs because First Horizon was "in a position of superiority in the preparation and the conduction of this transaction." J.R. 199. The court therefore concluded that the evidence established that any mistake was a unilateral one by First Horizon. The court accordingly held that First Horizon's contract reformation claims failed. The court rejected First Horizon's equitable subrogation claim because First Horizon no longer held the Deed of Trust and thus could not step into the shoes of the holder of the loan. The court made no express finding on the issue of equitable mortgage.

Pressed by Faller on the issue of standing, the court then held that First Horizon did not have standing. The court found that, regardless of the language of the PSA, First Horizon had not produced documentary evidence that the Georgs' loan was covered by that agreement. The court declined to credit the testimony of Stern on the point, noting that his testimony was "very self

serving in that regard." J.R. 200. When asked to clarify the nature of the two determinations—one on the merits, one on standing—the court stated that the rulings were offered in the alternative. The court then granted judgment in favor of the Georgs and issued a written order memorializing that determination on May 10, 2012.

### C.     The Appeal

On June 22, 2012, Faller filed a Notice of Appeal on behalf of First Horizon in which he described the May 10, 2012 Order as a Judgment entered in favor of the Georgs against First Horizon. In a footnote, he noted that because Bank of America was in default, no judgment had yet been entered on First Horizon's claims against it. Faller stated that the Notice was filed out of "an abundance of caution" to the extent that the Judgment against First Horizon was deemed final and appealable even without an entry of judgment relating to Bank of America. J.R. 549.

On July 18, 2012, Faller filed in a "Motion for Entry of Judgment in Favor of Defendant Bank of America, N.A." In the motion, Faller asked that judgment be entered in favor of Bank of America on First Horizon's claims, without prejudice to First Horizon's right to later seek reversal of that judgment. The motion made no reference to the other remaining defendant, PRLAP. Faller stated that First Horizon was seeking such a ruling to remove uncertainty whether there had been a final judgment in *First Horizon*, and thus whether the Maryland Court of Special Appeals had jurisdiction over First Horizon's pending appeal of the May 10, 2012 Order. On August 27, 2012, the circuit court denied the motion, explaining that First Horizon had provided no authority permitting the court to issue what amounted to a judgment without prejudice. On September 26, 2012, Faller filed a second, similar motion, but no longer asked that the judgment be issued without prejudice to First Horizon's right to later challenge it. That motion was also denied.

On February 4, 2013, First Horizon voluntarily dismissed its outstanding claims against Bank of America and PRLAP. First Horizon amended that notice of dismissal on February 12, 2013 to clarify that the dismissal was with prejudice. First Horizon did not file a new Notice of Appeal following its voluntary dismissal of the remaining claims.

On appeal, First Horizon argued, first, that the trial court's standing determination was erroneous. Second, it argued that if the trial court was correct that First Horizon lacked standing, then the trial court had exceeded its authority in ruling on the merits. Lastly, First Horizon argued that the court's factual finding on the merits that there was no mutual mistake was clearly erroneous because the circumstances of the case, particularly the Georgs' post-closing course of conduct surrounding the loan, evinced their intent to enter into a mortgage. In turn, the Georgs argued, among other things, that First Horizon's appeal was untimely because the Notice of Appeal had been filed before a final judgment was rendered. *See* Md. Code Ann., Cts. & Jud. Proc. § 12-301 (West 2011) (stating that, except in certain circumstances not relevant here, "a party may appeal from a *final* judgment entered in a civil or criminal case by a circuit court") (emphasis added); Md. Rule 8-202(a) (stating that, with exceptions not relevant here, "the notice of appeal shall be filed within 30 days after the entry of the judgment or order from which the appeal is taken"). The Maryland Court of Special Appeals agreed with the Georgs and dismissed First Horizon's appeal as untimely. *First Horizon v. Georg*, No. 760 (Md. Ct. Spec. App. Sept. 30, 2013) (unreported).

### III.    The *BNYM* Litigation

In December 2013, a second lawsuit was filed against the Georgs, this one with BNYM as the plaintiff, asserting the same or similar claims as those asserted in *First Horizon*, including claims for reformation of the Deed of Trust, equitable subrogation, and equitable mortgage. After discovery, the court granted summary judgment to the Georgs, determining that BNYM's claims

were barred by *res judicata* and collateral estoppel in light of *First Horizon*. BNYM appealed that determination to the Court of Special Appeals, which affirmed the circuit court, and then to the Maryland Court of Appeals, which affirmed the Court of Special Appeals. *See BNYM v. Georg*, 175 A.3d 720, 757 (Md. 2017) ("*BNYM*").

After years of litigation and two separate, failed lawsuits, Old Republic now brings this legal malpractice and breach of contract action against Shulman Rogers and Faller, alleging that their representation was deficient, and thus breached the contract for legal services, in three respects: (1) failing to name the proper plaintiff in *First Horizon* or, alternatively, to submit adequate documentation establishing First Horizon's standing to proceed against the Georgs; (2) failing to properly argue the issues of equitable subrogation and equitable mortgage to the trial court; and (3) failing to note a timely appeal to the Court of Special Appeals.

## DISCUSSION

Defendants have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Old Republic opposes that Motion and has filed its own Cross Motion for Summary Judgment. Despite itself moving for summary judgment, Old Republic's counsel has also submitted an affidavit pursuant to Federal Rule of Civil Procedure 56(d) stating that summary judgment should not be entered in favor of Defendants because Old Republic cannot yet present facts essential to its opposition.

## I.    Legal Standards

Defendants' Motion is styled as a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment, under Rule 56. Fed. R. Civ. P. 12(b)(6), 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when

the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or comparable filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

11

*See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). In its Rule 56(d) affidavit, Old Republic's counsel asserts that before summary judgment may be considered, Old Republic should have an opportunity to obtain through written discovery Defendants' internal documents and notes relating to communications with Old Republic, the strengths and weaknesses of the *First Horizon* litigation, the law of equitable subrogation and equitable mortgage, and any evidence of possible negligence of Old Republic's title agent. He also claims that Old Republic should have the opportunity to depose Faller and a Shulman Rogers corporate designee regarding communications with Old Republic on those topics.

The Court finds that the proposed discovery would not materially advance this litigation. The discovery Old Republic proposes amounts to information about Defendants' litigation strategy in the *First Horizon* case. However, as discussed below, a legal malpractice action requires this Court essentially to reconstruct the underlying action absent the supposed breach of the duty owed by counsel and to assess what the probable outcome would have been absent the breach. *Suder v. Whiteford, Taylor, & Preston, LLP*, 992 A.2d 413, 414 (Md. 2010). Thus, Old Republic need only establish that Defendants' actual litigation performance fell below the minimum professional standards. Here, there is a fulsome record on Defendants' actual litigation strategy and performance, namely the record of the proceedings below from trial through appeal, that the Court will consider in evaluating Old Republic's claims. There is no need for discovery on what legal theories Defendants considered and rejected. To the extent that Old Republic may seek to argue that there was an alternative legal theory or argument relating to equitable subrogation or equitable mortgage that a reasonable attorney could have and should have pursued, the Court may evaluate such a theory and find for Old Republic if the failure to pursue it constituted legal malpractice, regardless of whether it was actually considered or discussed by Defendants during the course of

the litigation. As for the specific request for discovery regarding possible negligence by the title agent, as is evident from the discussion below, the Court finds no need to address that question in order to resolve the Motion. The Court thus finds no need for discovery before considering whether summary judgment is warranted.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II.    Legal Malpractice

"To prevail on a claim for legal malpractice, a former client must prove (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty." *Suder*, 992 A.2d at 418. As to the first factor, there is no dispute that Defendants were employed by Old Republic. As to the second factor, Old Republic asserts that Defendants engaged in malpractice by failing to name the proper plaintiff or establish that First Horizon had standing, and by failing to file a timely notice of appeal. Although Old Republic also asserted in the Complaint that Defendants engaged in malpractice by failing to properly argue

13

its equitable subrogation and equitable mortgage claims before the trial court, it identifies no particular failure by Defendants in presenting evidence or arguing those issues, and it fails to discuss this issue in its Opposition to the Motion. Accordingly, the Court need not address it.

On the remaining alleged forms of malpractice, although Defendants do not expressly concede negligence, they do not directly contest Old Republic's claims that the failure to identify the proper plaintiff or submit evidence that First Horizon had standing, and the failure to file a timely notice of appeal, constituted neglect of an attorney's reasonable duty. Rather, Defendants focus their energy on the injury element of malpractice, asserting that none of the alleged negligence proximately caused any loss to Old Republic.

In considering the third element of causation of loss, the court must "assume the role of the earlier adjudicator in order to ascertain the probable outcome of the action" had there been no breach. *Id.* at 414. "Simply put, the court must try a case within a case." *Id.* In this way, the case-within-a-case doctrine "exposes what the result should have been or what the result would have been had the lawyer's negligence not occurred." *Id.* at 420. A court therefore must evaluate each alleged deficiency in turn to assess the probable outcome of the original claims.

### A.    Standing

Turning to the first allegation of malpractice, that Faller failed to identify the proper plaintiff or to provide adequate evidence of First Horizon's standing to sue on behalf of BNYM, there is no dispute that despite the defects in standing ultimately identified by the trial court, First Horizon proceeded to trial on its claims, and the court ruled against First Horizon on the merits. Although Old Republic asserts that the trial court failed to address its claims of equitable subrogation and equitable mortgage, the trial court expressly denied the equitable subrogation claim. Although the trial court made no express finding on the equitable mortgage claim, as

discussed below, the disposition of the equitable mortgage claim is necessarily dictated by the trial court's factual findings on the reformation claims. Where Defendants' pleading and evidentiary deficiencies on the issue of standing did not deprive First Horizon of a merits determination of its claims, the Court finds no injury to Old Republic on this score.

Moreover, to the extent that the trial court may not have ruled on the equitable claims on the merits, in order to establish that any negligence by counsel on the issue of standing caused actual injury, Old Republic would have to show that had standing been properly established, it would have prevailed on the merits. *Suder*, 992 A.2d at 418. To the extent that Old Republic argues that the trial court's determinations were erroneous and would have been overturned on appeal, the Court addresses that question below.

**B.     Notice of Appeal**

As to Old Republic's claim that the failure to file a timely notice of appeal constituted legal malpractice, such a claim may succeed only if that omission caused injury to First Horizon. In assessing this question, this Court must determine what the result would have been had the notice been timely filed and an appeal had been considered on the merits. *Suder*, 992 A.2d at 420. The trial court granted judgment in favor of the Georgs and against First Horizon after a bench trial pursuant to Maryland Rule 2-519(b), which governs motions for judgment when the court sits as the trier of fact. On appeal, therefore, the trial court's decision would be reviewed both on the facts and on the law. *Yaffe v. Scarlett Place Residential Condo., Inc.*, 45 A.3d 844, 850 (Md. Ct. Spec. App. 2012). The trial court's factual findings would not be disturbed unless they were clearly erroneous, and "due regard" would be given to the trial court's opportunity to judge the credibility of the witnesses. *Id.* The trial court's legal conclusions would be reviewed *de novo.* *Id.*

In its brief to the Court of Special Appeals, First Horizon argued that: (1) the trial court erred in finding that First Horizon did not have standing; (2) if the trial court did not err in finding that First Horizon did not have standing, then it acted in excess of its authority in conducting a trial on the merits; and (3) the trial court's decision on the merits was clearly erroneous because it failed to account for the Georgs' post-closing course of conduct. In opposing the present Motion, Old Republic no longer pursues the first two arguments. Indeed, this Court perceives no basis for an appellate court to find error in the trial court's determination as to standing, where First Horizon admitted that, because it sold the Georg mortgage in 2006, it could not sue in its own capacity, and in attempting to salvage its case by asserting its right to sue as master servicer, First Horizon provided an excerpt from a PSA but failed to provide the schedule of loans that would have established whether or not the PSA governed the Georgs' loan. Likewise, the argument that, upon finding a lack of standing, the court had no authority to adjudicate the case on the merits, was effectively rejected by the Maryland Court of Appeals in *BNYM*. In arguing that the doctrines of *res judicata* and collateral estoppel did not apply, BNYM asserted that once the trial judge found a lack of standing, "the ruling on the merits could have no force or effect." *BNYM*, 175 A.3d at 753 n.7. The Court of Appeals rejected that argument because "the ruling on the merits was the initial ruling," and "was an independent ruling intended to be a final judgment." *Id.* Where Maryland's highest court has already considered this specific issue and determined that the trial court's merits determination rendered a proper final judgment, First Horizon would not have succeeded on this argument.

Thus, Old Republic argues only that had the Court of Special Appeals considered the merits of the trial court's decisions, it would have reversed the trial court's failure to apply the doctrines

of equitable subrogation and equitable mortgage and its refusal to reform the Deed of Trust based on a mutual mistake.

### 1. Equitable Subrogation

In Maryland, the doctrine of equitable subrogation provides that a party "advancing money to discharge a prior lien on real or personal property and taking a new mortgage as security, is held to be entitled to subrogation to the prior lien as against the holder of an intervening lien of which he was excusably ignorant." *G.E. Capital Mortg. Servs., Inc. v. Levenson*, 657 A.2d 1170, 1175 (Md. 1995) (citation omitted). Equitable subrogation thus essentially allows a later lienholder whose loan is discharging a prior loan—such as when a homeowner pays off an original mortgage with a refinanced mortgage—to keep the priority status of the original mortgage loan in the face of an intervening security interest on the property. *See id.* The Maryland courts have accordingly interpreted equitable subrogation in the mortgage context to be appropriate where an intervening lienholder of which a refinancing lender was excusably unaware jumps the queue in terms of loan priority status. *See Fishman v. Murphy*, 72 A.3d 185, 198 (Md. 2013) ("[E]quitable subrogation applies in the absence of actual knowledge on the part of the subrogation claimant concerning the intervening lien." (quoting *Levenson*, 657 A.2d at 1178)); *Bennett v. Westfall*, 46 A.2d 358, 361 (Md. 1946) (finding equitable subrogation appropriate where a refinanced mortgage was issued without knowledge of an intervening judgment on the property, because it could not be said that the lender had "intended to substitute a junior lien for a senior lien and thus place the intervening judgment ahead of his mortgage").

Here, however, there was no intervening lien that took priority over First Horizon's lien. Rather, First Horizon lost its position as a senior lienholder because the refinanced mortgage loan was processed in such a way as to render it an unsecured interest. Further, even if one made the

strained assertion that Mrs. Georg's interest in the tenancy in the entirety was an intervening lien, where that interest was declared on the loan application itself, First Horizon has no colorable argument that it was excusably ignorant of her claim to the Property. Because First Horizon's loss of its priority status was not a matter of line jumping but of defects in the transaction itself, the Court concludes that equitable subrogation does not provide a basis to grant relief to First Horizon, such that the inability to obtain appellate review of that claim caused Old Republic no injury.

The cases on which Old Republic relies are, in fact, consistent with this understanding. In *Bennett*, a refinanced mortgage was bumped to junior lien status based on an intervening judgment of which the refinancing lender was unaware. *Bennett*, 46 A.2d at 359. In finding that the refinanced loan should be restored as the senior lien, the court determined that such restoration would work no harm on the intervening lienholder, who would simply be restored to its original position. *Id.* at 361. There was no claim, as here, that a defect in the mortgage documents themselves that rendered an interest unsecured could be excused under this doctrine. Old Republic's other cited authorities analyze the scope of subrogation in the context of perfected interests under the Uniform Commercial Code for purposes of bankruptcy and thus provide limited insight to the facts here. *See Rinn v. First Union*, 176 B.R. 401, 407–10 (D. Md. 1995); *In re Advance Insulation & Supply, Inc.,* 176 B.R. 390, 399 (Bankr. D. Md. 1994). Notably, as in *Bennett*, these cases frame equitable subrogation as granting priority to a lienholder who has paid a debt arising under a senior lien but failed to timely perfect or record its interest to maintain priority over other lienholders, not as excusing a failure to obtain a property owner's agreement to grant it a security interest in the first place. *See Rinn*, 176 B.R. at 409; *In re Advance Insulation*, 176 B.R. at 400. Where the facts of this case would require a court not to re-prioritize a secured interest, but to transform an unsecured interest into a secured interest, the potentially applicable

doctrine is equitable mortgage, not equitable subrogation. The Court therefore concludes that the failure to secure a merits appeal on the issue of equitable subrogation did not cause injury to Old Republic.

### 2.    Intent

This Court also finds that an appellate court would not have reversed the trial court's judgment on the merits because the factual findings on the intent of Mrs. Georg were not clearly erroneous, and these findings dictate the outcome on the contract reformation and equitable claims. First Horizon's claim for contract reformation was premised on the existence of a mutual mistake of fact as to the need for Mrs. Georg to sign the Deed of Trust. *See Md. Port Admin. v. John W. Brawner Contracting Co.*, 492 A.2d 281, 288 (Md. 1985) (emphasizing, in a case involving a unilateral arithmetic mistake by the low bidder for a government contract, that "one of two circumstances must exist before a court of equity will reform a written contract: either there must be mutual mistake, or there must be fraud, duress, or inequitable conduct"). In ruling that First Horizon had not prevailed on the merits, the trial court found insufficient evidence from which to conclude that Mrs. Georg was knowledgeable about the transaction and intended to sign the Deed of Trust to encumber the Property with a mortgage in favor of First Horizon, such that the failure to have Mrs. Georg execute the Deed of Trust could be deemed a mutual mistake of the parties. In making this determination, the trial court relied on the testimony of First Horizon's own witnesses, who could point to no instance in which anyone informed Mrs. Georg of the need to sign the Deed of Trust. Rather, as First Horizon acknowledged, it prepared the Deed of Trust without any signature line for Susan Georg. Where First Horizon was "in a position of superiority in the preparation and the conduct of this transaction," the court found that the mistake was a unilateral one by First Horizon and accordingly granted judgment in favor of the Georgs on the

19

contract reformation claim. J.R. 199. *See Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (Md. 1985) (stating that Maryland "follows the objective law of contracts," and thus "when the language of the contract is plain and unambiguous[,] there is no room for construction, and a court must presume that the parties meant what they expressed"). *Cf. Clancy v. King*, 954 A.2d 1092, 1104 (Md. 2008) (finding that parties had "already and objectively ... indicated their intent to be bound by the contract as evidenced by the signatures earlier on the page"); *Douglas v. First Sec. Fed. Sav. Bank, Inc.*, 643 A.2d 920, 928 (Md. Ct. Spec. App. 1994) ("Appellant's signature, however, indicates an intent to be bound by the agreement").

The remaining, extrinsic documentary evidence was not conclusive on the issue of Mrs. Georg's intent at the time of the signing of the Deed of Trust. Although Mrs. Georg signed or was referenced in certain documents at closing evidencing her co-ownership of the Property, other documents besides the Deed of Trust, such as the mortgage interest statements, referenced only Mr. Georg and thus suggested an intent not to include Mrs. Georg in certain aspects of the transaction. The Court therefore finds that an appellate court would conclude that the trial court's factual finding that the mistake was unilateral, not mutual, was not clearly erroneous.

This same factual finding as to mistake also leads to the conclusion that an appellate court would not have reversed on the equitable mortgage claim. On first glance, Old Republic's equitable mortgage theory appears to be better suited to the facts of this case than equitable subrogation. The doctrine of equitable mortgage allows a court to treat a defective mortgage as a binding mortgage when "an instrument which is intended to charge certain lands, even though defectively executed, is nevertheless considered to be evidence of an agreement to convey." *Lubin v. Klein*, 193 A.2d 46, 48 (Md. 1963). Thus, courts may find an equitable mortgage where, although there was a technical defect in the documents or in the recording, it was otherwise evident

that the parties had a "specific intent to create a lien." *Pence v. Norwest Bank*, 768 A.2d 639, 645 (Md. 2001). The intent of the parties is paramount, because an equitable mortgage follows only where "there is present an intent of the parties to make a mortgage," and "in all such cases the intent to create a mortgage is the essential feature of the transaction." *W. Nat'l Bank v. Nat'l Union Bank*, 46 A. 960, 962 (Md. 1900). Intent can be "apparent from the instrument and circumstances leading to it." *Keyworth v. Israelson*, 214 A.2d 168, 177 (Md. 1965).

Because the doctrine of equitable mortgage applies where technical defects in the transaction undo the intent of the parties to create a mortgage, the trial court's finding that Mrs. Georg did not intend to sign the Deed of Trust and enter into a binding mortgage precludes application of this doctrine. Indeed, as discussed above in relation to the contract reformation claim, the trial court's factual finding on intent was not clearly erroneous. Accordingly, First Horizon would not have succeeded on appeal on not just the contract reformation and equitable subrogation claims, but on the equitable mortgage claim as well. *See BNYM,* 175 A.3d at 737, 757 (affirming the trial court's finding that BNYM's claims were barred by collateral estoppel because its "claims for equitable subrogation, equitable mortgage, and equitable lien all center on whether [Mrs. Georg] intended to sign the refinance Deed of Trust," which were issues "identical to those decided by Judge Alexander in the First Horizon litigation") (quoting the trial court's opinion)).

Old Republic's reliance on *Pence* and *Dyson v. Simmons*, 48 Md. 207 (Md. 1878), does not alter this conclusion. Both cases stand for the broad proposition that "instruments which we have held to be equitable mortgages have been ones which on their face appeared to be mortgages but were defective in some manner." *Pence*, 768 A.2d at 646; *see Dyson*, 48 Md. at 214 (stating that an equitable mortgage may be found where "the instrument is at least evidence of an agreement to convey" but the agreement is stymied by a technical defect such as failure to record in due time).

Here, however, where the Deed of Trust lacked even a signature line for Mrs. Georg, the document on its face did not demonstrate an intent for Mrs. Georg to convey a mortgage on the Property.

Thus, where in resolving the contract reformation claim, the trial court made a factual finding that Mrs. Georg did not intend to sign the Deed of Trust and thereby to create a mortgage on the Property, and that finding was not clearly erroneous, the Court concludes that the failure to file a timely notice of appeal could not have caused Old Republic injury as to any of the claims raised below. Where Old Republic cannot show injury from the alleged malpractice, Defendants' Motion for Summary Judgment will be granted, and Old Republic's Cross Motion for Summary Judgment will be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, will be GRANTED. Old Republic's Cross Motion for Summary Judgment will be DENIED.

Date: December 16, 2019

THEODORE D. CHUANG
United States District Judge